## In re PARAMOUNT PUBLIX CORPORATION.

## CIRCLE THEATRE CO. et al. v. PARAMOUNT PICTURES, Inc.

### No. 85.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1936.

Samuel Spring, of New York City, for appellants.

Root, Clark, Buckner & Ballantine, of New York City (Henry J. Friendly, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The disputed claim is based upon a contract of guaranty made by the debtor with respect to two theater leases, in which the claimants were landlords and the tenant whose obligations were guaranteed was lessee. The tenant defaulted in payment of the rent, payable in advance, for the month of January, 1933, and abandoned the premises at the close of business on January 30th. Thereupon the landlords entered and took possession. They operated the theaters for their own account from January 31 to August 25, 1933, when they made a ten-year lease to a new tenant. The first item of their claim is for the January, 1933, rent, $13,159.61; the second item, in the amount of $24,204.35, is a depreciation charge by which they reduced the "net in-

come" derived during their operation of the theaters. As to each item the dispute turns upon the proper construction of the eighth article of the agreement of guaranty, which is reproduced in the margin [1] with immaterial provisions omitted.

Whether the debtor is liable for the January rent depends upon whether the two-year period of its guaranty begins on January 1st or 31st. This in turn depends upon the meaning of the words: "In the event of a default * * * which would entitle the landlord to the right of forfeiture, * * * Paramount shall for a period of two (2) years after such default" pay damages as specified in the agreement. Turning to the leases, which are alike, we find that, if the tenant abandons the premises, or is adjudicated bankrupt, the landlord gets an immediate right of forfeiture, but, if the tenant fails to pay rent or to comply with any other covenant, the right of forfeiture is granted only when "such default shall continue for a period of thirty (30) days after written notice thereof from landlord." No written notice of the failure to pay rent due January 1, 1933, was ever given. Accordingly the court below held that the guarantor's liability began on abandonment rather than on nonpayment of rent. In other words, it ruled that a default "which would entitle the landlord to the right of forfeiture" means one which does so entitle him. Against this it is urged that the words could as well be read to mean a default which may ripen into a right to forfeit, although it has not yet done so. This would be consistent with the use of the word "default" in the leases. Furthermore, it is reasonable to suppose that the parties would have meant to make the guarantor liable for the initial failure to pay, since this is the most certain loss of all. Although recognizing that these arguments are not without force, we do not think they can prevail against countervailing considerations. The article concerned provides that the landlord "during said two year period," may, if it so desires, operate the properties for itself. This would seem to contemplate that it might do so at any time throughout the entire period. But, if the period begins before the landlord has an immediate right of entry, operation by the landlord will be excluded for so much of the two years as elapses before it can take possession. Moreover, to adopt the construction contended for by the appellants might lead to most unreasonable results under other circumstances. For example, if the tenant failed to pay taxes as required by the leases, such a default would ripen into a right of forfeiture thirty days after the landlord gave written notice thereof; yet the landlord might not discover the default or give notice thereof for several months, during which the tenant might have continued to pay the monthly rental. Under such circumstances the landlord would certainly be the first to urge, and we think rightly, that the guarantor's period of liability should not be dated back to the initial failure to pay taxes. Literally a default in paying rent or taxes is not one which would ever of itself entitle the landlord to forfeit the lease; only after he has given notice and the default has continued for thirty days thereafter does it become a default of the character which would create a right of forfeiture and fix the guarantor's liability. The parties drew their agreement for the purpose of indemnifying the landlords against loss sustained during a carefully

---

[1] Eighth: In the event of a default in either of the foregoing leases which would entitle the landlord to the right of forfeiture, such default not being cured by the guarantors on said leases, Paramount shall for a period of two (2) years after such default, pay to Circle, upon demand, as damages a sum equal to the amount of the gross monthly rental provided for in said leases, it being understood, however, that if during said two year period, the landlord under said leases shall rent either or both of said properties to others and shall receive any rental income therefor, the rent payable by said Paramount during said two year term, shall be reduced by the rental income actually received during said period for either or both of said properties by the landlord.

During said two year period, Circle may, if it is so desired, operate in said properties any business for which the same may be suitable, setting up on its books or on the books of the corporation or corporations operating said business or businesses, a monthly rental charge equivalent to the rentals provided for in said leases, and if the net income derived monthly from said business or businesses during said two year period shall not be sufficient to pay such rental charges, the deficiency not exceeding, however, the rental provided in said leases, shall be payable monthly by Paramount. * * *

The total liability of Paramount shall not in any event exceed two years' rent as provided for in said leases.

defined period. Taking their words literally, the default on January 1st, of which no written notice was ever served upon the tenant, would never entitle the landlord to the right of forfeiture. We think the rental item of the claim was rightly disallowed.

During the period from January 31 to August 25, 1933, the landlords realized from their own operation of the theaters an excess of income over outgo of $30,677.96. In their proof of claim they credited the guarantor with only $6,473.41 for that period, the sum of $24,204.35 having been deducted from income as a charge for depreciation of the theaters. The court below disallowed this deduction, and the correctness of this ruling turns on the meaning of "the net income derived monthly from said business" during the landlords' operation. The obvious purpose of this clause of the agreement was to put the landlords in as good a position as they would have occupied, had there been no forfeiture of the leases. Forfeiture was plainly not intended to better their position. As they would have had to bear depreciation charges upon the theaters had the leases continued, it is perfectly clear that they were intended to bear them in the accounting provided for by the clause in question.

Order affirmed.